**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| VICTOR RIVERA RIVERA; ERNESTO SEBASTIAN CASTILLO RIOS; VICENTE CORNEJO LUGO; JESUS GARCIA MATA; LUIS ANGEL GARCIA MATA; GAUDENCIO GARCIA RIOS; SIMON GARCIA RIOS; VICENTE CORNEJO CRUZ; EMILIO MONTOYA MORALES; JORGE LUIS AGUILAR SOLANO; DOMINGO RAMOS RIOS; ARTEMIO RINCON CRUZ; SERGIO RIOS RAMOS; PEDRO RIVERA CAMACHO; REGULO RINCON CRUZ; AURELIANO MONTES MONTES; MANUEL RIVERA RIVERA; MARTIN FLORES BRAVO; VIRGILIO MARQUEZ LARA; JOSE BALDERAS GUERRERO; GERARDO RIOS RAMOS, *Plaintiffs-Appellants*, <br><br> v. <br><br> PERI & SONS FARMS, INC., *Defendant-Appellee*. | No. 11-17365 <br><br> D.C. No. 3:11-cv-00118-RCJ-VPC <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted
June 14, 2013—San Francisco, California

Filed November 13, 2013

Before: Diarmuid F. O'Scannlain and Milan D. Smith, Jr.,
Circuit Judges, and James K. Singleton, Senior District
Judge.[*]

Opinion by Judge O'Scannlain

---

**SUMMARY**[**]

---

**Labor Law**

The panel affirmed in part and reversed in part the district court's dismissal of claims of Mexican temporary farmworkers under the Fair Labor Standards Act and relevant state law.

The panel reversed the district court's dismissal of the farmworkers' FLSA claims to the extent that they accrued within three years of filing suit, reversed its dismissal of their breach of contract claims, affirmed its dismissal of their claims under Nev. Rev. Stat. § 608.140, and reversed its dismissal of their other state statutory and constitutional

---

[*] The Honorable James K. Singleton, Senior District Judge for the U.S. District Court for the District of Alaska, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

claims to the extent that they accrued within two years of filing.

The defendant agricultural employer hired the farmworkers through the H-2A program of the United States Department of Labor. The panel held that in light of the DOL's regulatory interpretation, the employer was subject to FLSA regulations requiring reimbursement of certain expenses during each employee's first week of work. Deferring to the DOL's interpretation, the panel held that travel and immigration expenses incurred by the farmworkers were covered by the FLSA regulations because these expenses primarily benefitted the employer.

The panel held that the farmworkers stated a claim for breach of contract under Nevada law.

As to claims under Nevada wage-and-hour laws that largely duplicated the farmworkers' claims under the FLSA and their claims for breach of contract, the panel held that Nevada law would follow federal law on claims under Nev. Rev. Stat. §§ 608.250 and 608.260, as well as the Nevada Constitution. The panel held that the farmworkers stated claims under §§ 608.040 and 608.050 for failure to pay wages due under their employment contracts. The panel affirmed the dismissal of claims for attorneys' fees under § 608.140 for failure to allege a demand.

The panel held that the district court was correct to address statute of limitations issues because these affirmative defenses were apparent on the face of the complaint. The panel affirmed the dismissal of state constitutional claims to the extent that they accrued more than two years before the farmworkers filed suit. The panel held that because the

farmworkers sufficiently alleged willfulness, the district court erred in applying a two- rather than a three-year statute of limitations to the FLSA claims.

The panel affirmed in part, reversed in part, and remanded for proceedings not inconsistent with its opinion.

**COUNSEL**

José Jorge Behar, Chicago, Illinois, argued the cause and filed the briefs for the plaintiffs-appellants. With him on the briefs were Matthew J. Piers, Chicago, Illinois, and Mark R. Thierman, Reno, Nevada.

Brad Johnston, Yerington, Nevada, argued the cause for the defendant-appellee. Gregory A. Eurich, Denver, Colorado, and Joseph Neguese, Denver, Colorado, filed the brief for the defendant-appellee.

Diane A. Heim, Washington, D.C., argued the cause and filed the brief for Amicus Curiae Secretary of Labor, in support of the plaintiffs-appellants. With her on the briefs were M. Patricia Smith, Washington, D.C., Jennifer S. Brand, Washington, D.C., and Paul L. Frieden, Washington, D.C.

Monte B. Lake, Washington, D.C., filed the brief for Amicus Curiae National Council of Agricultural Employers, in support of the defendant-appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We are asked to decide claims of Mexican temporary farmworkers under the Fair Labor Standards Act and relevant state law.

I

A

Peri & Sons is a Nevada corporation that produces, harvests, and packages onions.[1] The plaintiffs are Victor Rivera Rivera and twenty-three other Mexican citizens ("the farmworkers") admitted to the United States to cultivate, harvest, and process onions on Peri & Sons' farm. Since 2004, Peri & Sons has hired such foreign workers through the H-2A program of the United States Department of Labor (DOL).

American agricultural employers may hire aliens for temporary labor under the H-2A program if the DOL certifies that:

> (A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to

---

[1] Because this case was dismissed upon a motion under Federal Rule of Civil Procedure 12(b)(6), we assume the truth of factual allegations in the operative complaint. *See Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

perform the labor or services involved in the petition, and

(B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1188(a)(1). Before submitting an Application for Temporary Employment Certification, *see* 20 C.F.R. § 655.130, an "employer must submit a job order," *id.* § 655.121(a)(1). Job orders must comply with various requirements relating to the terms of employment. *See, e.g.*, *id.* § 655.122.

The farmworkers incurred expenses related to their employment with Peri & Sons. Some had to pay a hiring or recruitment fee of between $100 and $500 to Peri & Sons' employees in order to be considered for employment. All had to obtain H-2A visas from the United States Consulate in Hermosillo, Sonora, Mexico. Each farmworker paid the necessary fees and covered his own lodging costs in Hermosillo. The farmworkers also paid a fee to obtain Form I-94 from the United States Citizenship and Immigration Services upon entering the country. These immigration and travel expenses exceeded $400 for each plaintiff. In addition, the farmworkers purchased protective gloves, which were required for the performance of their jobs, at a cost of at least $10 per week. They each also incurred expenses of at least $100 in traveling from Peri & Sons' farm in Nevada back to their homes in Mexico.

The farmworkers claim that these expenses were primarily for Peri & Sons' benefit but that the company did not properly reimburse them.

B

The farmworkers filed their original complaint on February 16, 2011. The operative complaint for this appeal, however, is the Second Amended Complaint (SAC), which contained four counts. First, the SAC alleged that Peri & Sons violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, partially because it failed to reimburse each farmworker during his first week of employment for travel and immigration expenses. Second, it claimed that Peri & Sons breached its employment contracts by violating the terms of the job orders submitted to the DOL. Third, it alleged violations of Nevada wage-and-hour laws for failure to pay the minimum wage and failure to pay wages owed under employment contracts. Fourth, it asserted violations of the minimum wage requirement in the Nevada Constitution.

The district court dismissed the SAC with prejudice. It rejected the farmworkers' FLSA claims on the ground that 29 C.F.R. § 531.35 did not treat the relevant expenses as kickbacks. The district court dismissed the breach of contract claims because the farmworkers did not plead specific violations of the contracts beyond reiterating the wage claims. As to the state law statutory and constitutional claims, the district court treated them as "redundant" and dismissed both for the same reason it dismissed the FLSA claims. It also applied a two-year statute of limitations to the wage claims, both state and federal, holding that those having accrued

before February 16, 2009 were barred.  The farmworkers timely appealed.

II

A

Both the specific regulations governing the H-2A program and the more general FLSA regulations promulgated by the DOL control whether and when employers must reimburse employees for inbound travel and immigration expenses.  The parties agree that Peri & Sons' relationship with the farmworkers is subject to the H-2A regulations but dispute whether it is subject to the FLSA regulations.

Regulations concerning the H-2A program require employers to reimburse an employee who "completes 50 percent of the work contract period . . . for reasonable costs incurred by the worker for transportation and daily subsistence from the place from which the worker has come to work for the employer . . . to the place of employment." 20 C.F.R. § 655.122(h)(1).  Peri & Sons argues that this regulation only obligated it to reimburse its employees' travel expenses after the employees had completed half of their work rather than during each employees' first week.

The FLSA, on the other hand, requires that employers reimburse certain expenses during each employee's first week of work.  *See* 29 C.F.R. § 531.36 (applying the rule to "any such workweek").  The farmworkers argue that this FLSA regulation required Peri & Sons to reimburse them for immigration and travel expenses during the first week of work.  Peri & Sons argues that it is not subject to this FLSA regulation because applying the FLSA regulation to H-2A

employees would, as a practical matter, make the H-2A regulation superfluous. Peri & Sons also contends that deducting travel costs would frequently reduce a worker's first week's wages far below the minimum wage.

We must evaluate such arguments in light of the DOL's regulatory interpretation. A DOL regulation has clarified "that the FLSA applies independently of the H-2A requirements and imposes obligations on employers regarding payment of wages." 20 C.F.R. § 655.122(h)(1); *accord id.* § 655.122(p)(1) ("[An] employer must make all deductions from the worker's paycheck required by law."). Before issuing its regulation, the DOL had rejected many of the specific arguments raised here by Peri & Sons. *See* Temporary Agricultural Employment of H-2A Aliens in the United States, 75 Fed. Reg. 6884, 6915 (Feb. 12, 2010). Under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843–44 (1984), we must defer to the DOL's interpretation if: (1) the statutory provision is ambiguous, and (2) the agency's interpretation is reasonable.

The FLSA certainly does not unambiguously exempt H-2A employers from its requirements and related regulations. *See* 29 U.S.C. § 206 (requiring "[e]very employer" to pay the minimum wage to covered employees); *id.* § 213 (providing exemptions not relevant to Peri & Sons). Thus, the FLSA either unambiguously applies the reimbursement requirement to H-2A employers or contains an ambiguity on this point. Assuming without deciding that the statute is ambiguous, the DOL's interpretation is reasonable. Because the DOL's interpretation neither makes it impossible to comply with

both provisions nor creates surplusage,[2] it is "a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

B

Because Peri & Sons is subject to the FLSA reimbursement regulations, we must next decide whether the travel and immigration expenses incurred by the farmworkers are covered by such regulations.

The FLSA requires employers to pay at least the federal minimum wage to each employee "engaged in commerce." 29 U.S.C. § 206(a)(1). An employer has not satisfied the minimum wage requirement unless the compensation is "free and clear," meaning the employee has not kicked back part of the compensation to the employer. 29 C.F.R. § 531.35. Thus, employers generally may not issue paychecks at the minimum wage rate and then require employees to give some of the money back. An employer may charge its employees for the reasonable cost of providing them "board, lodging, or other facilities" because such charges are not kickbacks, meaning they can be included in the wage calculation. 29 U.S.C. § 203(m). Facilities "primarily for the benefit or convenience of the employer" do not count as "other facilities" and are not included in the wage calculation. 29 C.F.R. § 531.3(d)(1).

---

[2] The FLSA regulations require reimbursement in the first week to the extent that the expenses reduced an employee's wages below the minimum wage. The H-2A regulations require full reimbursement over a longer period of time. The H-2A regulations, therefore, are not superfluous because an employee paid more than the minimum wage would receive some reimbursement in the first week and some reimbursement later.

To the extent deductions for items not qualifying as "board, lodging, or other facilities"—such as items primarily benefitting the employer—lower an employee's wages below the minimum wage, they are unlawful. *Id.* § 531.36(b). Thus, the question before us is whether the expenses incurred by the farmworkers primarily benefitted Peri & Sons or the farmworkers.

1

The farmworkers argue that they incurred travel and immigration expenses, including fees associated with recruitment, visas, and I-94 forms, for the benefit of Peri & Sons. Peri & Sons, on the other hand, characterizes immigration expenses as primarily for the benefit of the employee.

The FLSA regulations provide an illustrative list of facilities that are "primarily for the benefit or convenience of the employer":

> (i) Tools of the trade and other materials and services incidental to carrying on the employer's business; (ii) the cost of any construction by and for the employer; (iii) the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform.

29 C.F.R. § 531.3(d)(2); *see also id.* § 531.32(c) (listing, as a facility primarily for the benefit of the employer, "transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad)"). Meals,

however, "are always regarded as primarily for the benefit and convenience of the employee." *Id.* § 531.32(c).

The status of inbound travel and immigration expenses is ambiguous under this regulatory standard. Travel and proper immigration costs are essential for the H-2A employment relationship to come to fruition. Presumably, both employers and employees benefit from the employment relationship. Employers can only hire H-2A workers after demonstrating that they are unable to satisfy their labor needs with American workers, *see* 20 C.F.R. § 655.161(b), so an employer's benefit is clear. Of course, foreign workers probably would not travel to the United States for temporary employment if employment of a similar quality were available closer to their homes. The employees' benefit is also clear. With such clear benefits to both the farmworkers and Peri & Sons, the identity of the primary beneficiary is ambiguous.

When regulations are ambiguous, we are required to defer to an agency's reasonable interpretations of those regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation." (internal quotation marks omitted)). Deference, however, is not appropriate if the agency's "interpretation is nothing more than a convenient litigating position or a post hoc rationalization" for its actions rather than a "fair and considered judgment on the matter in question." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (internal quotation marks and citations omitted). A change in an agency's interpretation does not present a "separate ground for disregarding the [agency's] present interpretation" unless

the change leads to "unfair surprise."  *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170–71 (2007).

The DOL has expressly addressed the status of inbound travel expenses.  Section 655.122(p) explains that an H-2A employer who is "subject to the FLSA may not make deductions that would violate the FLSA."  20 C.F.R. § 655.122(p)(1).  In a section interpreting § 655.122(p) and the FLSA regulations, a regulatory preamble provides that "an H-2A employer covered by the FLSA is responsible for paying inbound transportation costs in the first workweek of employment to the extent that shifting such costs to employees (either directly or indirectly) would effectively bring their wages below the FLSA minimum wage."  75 Fed. Reg. at 6915.

With regard to immigration and recruitment expenses,[3] the preamble incorporated by reference the analysis from a previous field assistance bulletin. *Id.* ("Because of the similar statutory requirements and similar structure of the H-2A and H-2B programs, the same FLSA analysis applies to the H-2A program as was set forth in the Field Assistance Bulletin [2009-2 (Aug. 21, 2009)].").  That analysis stated: "[T]ravel and immigration-related costs necessary for workers hired under the H-2B program are for the primary benefit of their employers, and the employers therefore must reimburse the employees for those costs in the first workweek if the costs reduce the employees' wages below the minimum wage."  U.S. Dep't of Labor Wage and Hour Div., Field Assistance Bulletin 2009-2, 9 (Aug. 21, 2009), *available at*

---

[3] This analysis does not apply to passport fees.  *See* 20 C.F.R. § 655.135(j).  The farmworkers, however, have voluntarily dismissed their claim for reimbursement of passport fees.

http://www.dol.gov/whd/FieldBulletins/FieldAssistanceBul
letin2009_2.pdf.   It also stated that "under both the visa
program regulations and the FLSA, we believe that
employers are responsible for paying the fees of any
recruiters they retain to recruit foreign workers and provide
access to the job opportunity." *Id.* at 12.

2

In the face of regulatory ambiguity, the DOL's
determination that inbound travel and immigration expenses
primarily benefit H-2A employers was reasonable.  There is
no reason to think that the DOL's determination was not a
product of its considered judgment.  Although the DOL
briefly changed its interpretation at one point in 2008, there
is no indication that the change caused any unfair surprise for
Peri & Sons.[4]      Therefore, we defer to the DOL's
interpretation.  The district court erred in ruling that Peri &
Sons was not required to reimburse its employees during the
first week of work for inbound travel and immigration
expenses to the extent that such expenses lowered their
compensation below the minimum wage.

III

The farmworkers also argue that, under the common law
of Nevada, Peri & Sons breached their employment contracts
by failing to adhere to the terms of the job order.   The

---

[4] The withdrawal of the brief-lived 2008 interpretation expressly stated
that the 2008 "interpretation may not be relied upon as a statement of
agency policy."  Withdrawal of Interpretation of the Fair Labor Standards
Act Concerning Relocation Expenses Incurred by H-2A and H-2B
Workers, 74 Fed. Reg. 13,261, 13,262 (Mar. 26, 2009).

purported breaches of contract stemmed from not only the FLSA violations discussed above but also the refusal to reimburse the farmworkers for the cost of their outbound travel and for the cost of gloves necessary to perform the job. The district court dismissed this claim on the ground that the SAC did not plead the breach with sufficient specificity.

The Federal Rules of Civil Procedure require federal plaintiffs to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). Such a statement must give the defendant "fair notice of the basis for [the plaintiffs'] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

Under Nevada law, "the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 408 (1865)). The farmworkers' complaint explained the contracts and damages at issue.  It asserted that the underlying contracts were the job "orders described in Paragraphs 12 to 14 of this Complaint." Such is a plausible claim because "[i]n the absence of a separate, written work contract entered into between the employer and the worker, the required terms of the job order and the certified Application for Temporary Employment Certification will be the work contract." 20 C.F.R. § 655.122(q). The SAC also claimed that the farmworkers had "substantial injuries in the form of lost wages."

The SAC alleged breaches by Peri & Sons. Employment contracts between H-2A employers and employees must "[a]t a minimum . . . contain all of the provisions required by this section." *Id.* § 655.122(q). Such mandatory terms include provisions prohibiting H-2A employers from "mak[ing] deductions that would violate the FLSA," *id.* § 655.122(p), and requiring H-2A employers to "provide or pay for the worker's transportation and daily subsistence from the place of employment to the place from which the worker . . . departed to work for the employer," *id.* § 655.122(h)(2). In light of these terms of the contract, the factual allegations incorporated into the breach of contract claim plausibly state a claim.

The district court erred in concluding that the farmworkers had not pled their breach of contract claims with sufficient specificity. Such allegations were sufficient to give Peri & Sons fair notice and to make the farmworkers' breach of contract claims plausible.[5]

## IV

The farmworkers asserted claims under Nevada wage-and-hour laws that are largely duplicative of their claims under the FLSA and their claims for breach of contract.

---

[5] Contrary to Peri & Sons' assertion, the farmworkers did not waive their recruiting fees argument by failing to raise it below. The Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss alleged that some of the farmworkers had been required to pay recruiting fees and argued that reimbursement of such fees was required by law.

A

In claims under Nevada Revised Statutes §§ 608.250 and 608.260, as well as the Nevada Constitution, the farmworkers allege that Peri & Sons failed to pay the Nevada minimum wage under the same kickback theory on which they relied for their FLSA claims.  The district court dismissed these claims on the same grounds that it dismissed the FLSA claims, reasoning that the Nevada Supreme Court would follow federal precedent on this issue.  We agree with the district court that the Nevada Supreme Court would probably interpret Nevada law to follow federal law on this issue.  *Cf.* Nev. Rev. Stat. § 608.250 (directing the Labor Commissioner to set the minimum wage "in accordance with federal law"); Nev. Admin. Code § 608.160(2)(a) (prohibiting an employer from "deduct[ing] any amount from the wages due an employee unless . . . [t]he employer has a reasonable basis to believe that the employee is responsible for the amount being deducted").

Peri & Sons claims that the Nevada courts would not interpret state law to follow federal law on this issue.  The cases on which Peri & Sons relies, however, merely indicate that the Nevada courts do not interpret state law in accordance with federal law when the relevant statutes contain materially different language.  In *Boucher v. Shaw*, 196 P.3d 959, 963 n.27 (Nev. 2008), the Nevada Supreme Court refused to adopt a test used in the federal courts to determine whether an individual is an "employer."  The court so ruled because the Nevada statute defining "employer" did not include any language indicating that officers of corporate employers were included.  *See id.*  The relevant federal statute, on the other hand, defined "employer" to include "any

person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

In *Dancer v. Golden Coin, Ltd.*, 176 P.3d 271, 274 (Nev. 2008), the court interpreted Nevada law to exclude tips from the calculation of an employee's minimum wage even though federal law permitted the inclusion of tips. Again, the state and federal statutes used significantly different language. *Compare* 29 U.S.C. § 203(m)(2) (including tips in the definition of wages), *with* Nev. Rev. Stat. § 608.160(1)(b) (making it unlawful to count "any tips or gratuities bestowed upon the employees" in a calculation of the minimum wage). In this case, on the other hand, the relevant state law is not textually inconsistent with federal law. *Compare* 29 U.S.C. § 206(a) ("Every employer shall pay to each of his employees . . . wages at the following rates . . . ."), *with* Nev. Rev. Stat. § 608.250(1) ("[T]he Labor Commissioner shall, in accordance with federal law, establish by regulation the minimum wage which may be paid to employees in private employment within the State.").

Because we disagree with the district court's interpretation of federal law, its dismissal of these state law claims cannot stand.

B

In claims under Nevada Revised Statutes §§ 608.040 and 608.050, the farmworkers allege that Peri & Sons failed to pay wages due under their employment contracts. The success of these claims depends upon the success of the contract claims discussed above. Because we conclude that the farmworkers adequately pled their claims for breach of contract, we also conclude that the district court should not

have dismissed their state law causes of action for wages due under those contracts.

The district court, however, dismissed the farmworkers' claims under § 608.140 for a different reason. Section 608.140 only permits a plaintiff to recover attorneys' fees when the plaintiff establishes "that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount" recovered. Nev. Rev. Stat. § 608.140. Because the farmworkers failed to allege that they had made such a demand, the district court dismissed their claim under § 608.140. The farmworkers did not include any argument about making a demand in their opening brief. As a result, they waived their right to challenge the district court's ruling on this issue. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). The district court properly dismissed the farmworkers' § 608.140 claim.

V

The district court dismissed all of the farmworkers' wage-and-hour claims to the extent that they accrued before February 16, 2009, applying a two-year statute of limitations.[6] The farmworkers first argue that the district court should not have addressed statute of limitations issues on a motion to dismiss because plaintiffs are not required to counter affirmative defenses in their complaints. They also assert that

---

[6] The farmworkers interpret the district court's order as applying a two-year statute of limitations to their breach of contract claims as well. It is not entirely clear whether the district court did so, but to the extent it did, it was in error. Nevada law provides a six-year statute of limitations for breach of contract claims. Nev. Rev. Stat. § 11.190(1)(b).

their state constitutional claims are subject to a four-year statute of limitations, and that their FLSA claims are subject to a three-year statute of limitations.[7] Peri & Sons contends that it was proper for the district court to consider statutes of limitations issues, that the farmworkers waived arguments about longer periods of limitations, and that we, even if we choose to consider such arguments, should reject them.

A

The farmworkers are correct to note that plaintiffs ordinarily need not "plead on the subject of an anticipated affirmative defense." *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993). When an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss. *See Cedars-Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126, 1128–29 (9th Cir. 1999) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1357 (3d ed. 1998) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6) . . . .")). In this case, the statute of limitations issues are apparent on the face of the complaint. The district court, therefore, was correct to address them.

---

[7] The farmworkers have not challenged the district court's application of a two-year statute of limitations to their claims under Nevada statutes. Accordingly, we do not disturb the district court's ruling on that issue.

B

With regard to their state constitutional claims, the farmworkers assert that the district court erred in failing to apply a catch-all four-year statute of limitations. *See* Nev. Rev. Stat. § 11.190(2)(c) (requiring "[a]n action upon a . . . liability not founded upon an instrument in writing" to be brought within four years). Peri & Sons argues that the farmworkers cannot present this argument for the first time on appeal. In response, the farmworkers suggest that they did not have an opportunity to raise the argument below because the district court acted *sua sponte* in applying a two-year statute of limitations to their state constitutional claims.

The district court, however, did not act *sua sponte* on this issue. Peri & Sons clearly argued to the district court that the two-year statute of limitations applies to the farmworkers' state constitutional claims. Instead of arguing in favor of a four-year statute of limitations, the farmworkers merely contended that the issue should not be resolved on a motion to dismiss, a contention we have already rejected. The farmworkers' failure to raise the argument below constitutes a waiver. *See Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1110 (9th Cir. 2010). The district court properly dismissed the state constitutional claims to the extent they accrued more than two years before the farmworkers filed suit.

C

With regard to the FLSA claims, the SAC clearly alleged that Peri & Sons' violations were "deliberate, intentional, and willful." The farmworkers argue that this allegation was sufficient to implicate the three-year statute of limitations in

29 U.S.C. § 255(a) for "a cause of action arising out of a willful violation." Peri & Sons contends that the farmworkers waived this argument by failing to raise it before the district court. *See Costanich*, 627 F.3d at 1110. The farmworkers, however, argued before the district court that they "adequately alleged that Defendant's FLSA violations were willful" and cited a Supreme Court case discussing the three-year statute of limitations for willful violations. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988) ("Ordinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, the Secretary must prove that the employer's conduct was willful . . . .").

While the farmworkers' argument could have been clearer, it ought to be read in light of the contention by Peri & Sons to which they were responding. In front of the district court, Peri & Sons acknowledged that willful violations were subject to a three-year statute of limitations but argued that there was no "factual basis" for finding the purported violations to be willful. Given the apparent source of the disagreement between the parties on the statute of limitations question, it was reasonable for the farmworkers to focus on the contested issue rather than the conceded one in their submission to the district court. On these facts, the farmworkers' submission was sufficient to raise the issue before the district court. It was not waived.

On appeal, Peri & Sons continues to argue that there is no factual basis for applying the three-year statute of limitations because any violation could not have been willful when the federal courts have disagreed with each other over the legality of such actions. The opinion on which Peri & Sons relies, *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp.

2d 117, 128 (E.D.N.C. 2011), however, arose on summary judgment, not a motion to dismiss. *Id.* at 120. At the pleading stage, a plaintiff need not allege willfulness with specificity. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). We conclude that the farmworkers sufficiently alleged willfulness and that the district court erred in applying a two-year statute of limitations at this stage.

## VI

For the foregoing reasons, we reverse the district court's dismissal of the farmworkers' FLSA claims to the extent that they accrued within three years of filing, reverse its dismissal of their breach of contract claims, affirm its dismissal of their claims under § 608.140, and reverse its dismissal of their other state statutory and constitutional claims to the extent that they accrued within two years of filing.[8] We remand for proceedings not inconsistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

---

[8] Because of their success on this appeal, we award costs to the plaintiffs-appellants.