**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. NV-14-1583-KiDJu |
| | NV-15-1071-KiDJu |
| PATRICIA ROBERTA LINDSEY, | (Related appeals) |
| Debtor. | Bk. No. 14-11448-BTB |
| | Adv. No. 14-1116-BTB |
| MICHELLE DARLENE WILSON, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| DESERT REALTY, INC., | |
| Appellee. | |

Submitted Without Oral Argument
on February 18, 2016[2]

Filed - March 21, 2016

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Chief Bankruptcy Judge, Presiding

Appearances:    Appellant Michelle Darlene Wilson, pro se, on
brief; John T. Wendlend of Weil & Drage APC on
brief for appellee Desert Realty, Inc.

Before:   KIRSCHER, DUNN and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2] The Panel entered orders on August 21 and October 14, 2015, ordering that these related appeals be submitted without oral argument in accordance with Rule 8019.

Appellant Michelle Darlene Wilson appeals two orders of the bankruptcy court: (1) an order dismissing her complaint against appellee Desert Realty, Inc. ("DRI") for damages concerning DRI's alleged violation of the codebtor stay under § 1301;[3] and (2) an order awarding DRI its attorney's fees and costs incurred in defending against Wilson's complaint. We VACATE the order dismissing the complaint, VACATE the order awarding attorney's fees and costs, and REMAND these matters to the bankruptcy court for further proceedings consistent with this decision.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Events leading to Wilson's complaint**

On November 15, 2013, Wilson and her sister, debtor Patricia Roberta Lindsey, entered into a lease agreement with DRI for an apartment in Las Vegas. When Wilson and Lindsey failed to pay rent and additional security deposits due on March 1, 2014, DRI proceeded with eviction proceedings against the sisters. DRI's efforts were thwarted when Lindsey filed a skeletal chapter 13 bankruptcy petition on March 5, 2014 (the "Lindsey bankruptcy").

On March 7, 2014, DRI moved for relief from stay in the Lindsey bankruptcy to continue with its eviction proceedings in state court. Although DRI references Wilson and Lindsey as tenants in its motion, further established by a copy of the lease attached as an exhibit to the motion, it only seeks relief from the automatic stay as to Lindsey. DRI did not seek relief from the co-debtor stay as to Wilson. Lindsey then filed her schedules

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

on March 31, 2014. In her Schedules G and H, Lindsey listed Wilson as a codebtor on the apartment lease.

Lindsey opposed DRI's motion for relief from stay. Lindsey argued that Wilson, as a codebtor on the lease, needed to be named as a party to the motion and contended that the motion should be denied because DRI had failed to request relief from the codebtor stay to proceed with its eviction.

At the hearing on April 15, 2014, conducted by a bankruptcy judge not assigned to the case, Lindsey again raised the issue of Wilson not being named as a party to the motion as a codebtor on the lease, which the bankruptcy court did not address but appeared to reject. After further discussion with Lindsey, who said she intended to pay the March lease arrearage though her chapter 13 plan and to pay her April and May rents directly to DRI, the bankruptcy court issued a bench order that if Lindsey failed to pay the April 2014 rent to DRI by April 30, 2014, DRI could submit an order terminating the automatic stay.

Lindsey's check for the April rent was returned for insufficient funds. On June 2, 2014, the bankruptcy judge assigned to the Lindsey bankruptcy entered an order, prepared by DRI's counsel and consistent with the April 15, 2014 bench order, terminating the automatic stay "as to [Lindsey]" and allowing DRI to "go forward with all remedies to which it is entitled, to take possession of [the apartment], using state court proceedings to do so, if necessary."

DRI then served Wilson and Lindsey with a 5-day notice to pay rent or quit. The sisters responded, contending the March rent and partial security deposit were being paid through Lindsey's

-3-

chapter 13 plan. The sisters further contended that a codebtor stay still existed for Wilson, which had not been terminated.

The sisters and DRI appeared at the hearing on the eviction matter in state court on June 19, 2014. Although the parties dispute what was said about the status of the Lindsey bankruptcy and whether or not any codebtor stay as to Wilson remained in effect, the state court ruled in favor of DRI and entered the eviction order.

On appeal in state court, Wilson and Lindsey contended the eviction order violated the codebtor stay under § 1301 and was therefore void. The state court denied the sisters' appeal of the eviction order on July 8, 2014, on the basis that "[n]o valid grounds for an appeal have been presented."

Faced with immediate eviction, Wilson then filed her own chapter 13 bankruptcy case on July 8, 2014, Case No. 14-14674.

**B. Wilson's adversary proceeding against DRI filed in Lindsey's bankruptcy**

Wilson filed a complaint against DRI in connection with Lindsey's bankruptcy, seeking damages under § 362 and § 105 for DRI's alleged willful violation of the codebtor stay under § 1301 (Adv. No. 14-1116).[4]

---

[4] Before DRI responded to the complaint, a hearing was held in Wilson's bankruptcy case on August 6, 2014, respecting her 30-day certification request under § 362(l). There, Wilson raised the codebtor stay issue, contending the stay relief order entered on June 2 applied only to Lindsey. After Wilson said she had filed two adversary complaints respecting DRI's alleged violation of the codebtor stay with its eviction order (one in the Lindsey bankruptcy and the other in her own bankruptcy case, Adv. No. 14-1120), the bankruptcy court reviewed the June 2 order. The court noted that the stay had been terminated as to Lindsey on
(continued...)

-4-

## 1.   DRI's motion to dismiss

DRI moved to dismiss Wilson's adversary complaint filed in the Lindsey bankruptcy under Civil Rule 12(b)(6)("Motion to Dismiss").  At the start, DRI noted Wilson's many bankruptcy filings — 12 cases filed in the District of Nevada since 1993. DRI contended that her complaint, which sought relief not intended for her protection or benefit, combined with her demonstrated abuse of the bankruptcy system as a serial filer, illustrated the complaint's frivolous nature and the bad faith behind filing it.

DRI contended that no stay relief was necessary as to Wilson as codebtor in Lindsey's bankruptcy, because the codebtor stay under § 1301 is intended to benefit the debtor, not a non-debtor; any protection of the codebtor is merely incidental.  In any event, the bankruptcy court had already considered Lindsey's codebtor stay argument, rejected it and entered the stay relief order against Lindsey on June 2, which DRI argued terminated the codebtor stay as to Wilson.  DRI contended Wilson could not have any damage claim for a stay violation when DRI had authority to continue with its eviction proceedings; thus, her complaint should be dismissed for failure to state a claim for relief.

Alternatively, in the event the bankruptcy court determined the codebtor stay was not terminated in the June 2 order, DRI contended the "balance of the equities" favored retroactive

---

[4](...continued)
June 2, but when Wilson inquired whether the "stay" had been terminated as to her, the court responded, "[i]t is not currently terminated as to you."  The court then told Wilson that if she failed to make the rent payments, the automatic stay would terminate immediately upon DRI submitting an order stating that the payments were not received.

annulment of the stay. DRI contended that even if the codebtor stay remained in effect at the time it obtained the eviction order, it was not liable for damages, as DRI had a good faith belief that the June 2 order terminated all stays and allowed it to proceed with the eviction.

Finally, DRI contended that even if Wilson's allegations were true, she could not prove damages. DRI argued that § 362 is limited to collection activities against the debtor, not those who are liable on the debt with the debtor but who have not sought bankruptcy protection. Therefore, Wilson was not entitled to damages under § 362. Further, argued DRI, unlike § 362, § 1301 contained no provision for awarding damages.

The notice DRI filed and served on Wilson on August 27, 2014, for the Motion to Dismiss indicated a hearing was set for October 2, 2014, and that any opposition had to be filed and served not later than fourteen days preceding the hearing per Local Rule 9014(d)(1). DRI's notice warned that if a written opposition was not timely filed and served, the court could refuse to allow Wilson to speak at the hearing or rule against her without formally calling the matter.

**2. Wilson's opposition to the Motion to Dismiss**

Wilson filed her untimely opposition to DRI's Motion to Dismiss one day before the hearing. Without addressing the merits of the arguments raised by DRI, Wilson contended the motion should be denied for DRI's alleged violation of a variety of local rules, including 5004(a)(b)(c), 7005(a), 7010(a)(b), 7015(a)(b), 7016, 7056 and 9014(b)(1).

/ / /

-6-

### 3. Hearing and ruling on the Motion to Dismiss

Wilson and DRI appeared for the October 2, 2014 hearing on the Motion to Dismiss. When the court asked why she had filed her opposition so late, Wilson responded that it was because she had received only some of DRI's papers, DRI's statement of nonopposition contained incorrect dates and DRI had failed to make its "initial disclosures" required under Local Rule 5004. Wilson claimed she had not received DRI's notice of the motion and hearing filed on August 27, 2014, at her residence of record in Henderson, Nevada. Wilson did admit, however, that she regularly received mail at the Henderson address. Counsel for DRI confirmed that the notice was sent to Wilson at the Henderson address based on a conversation with staff and the filed certificate of service. Convinced Wilson received DRI's notice, the bankruptcy court allowed DRI to proceed with its argument.

DRI's counsel began by noting that on August 13, 2012, in Wilson's bankruptcy case no. 12-18817, the instant judge had found Wilson to be a serial filer, engaging in efforts to hinder and delay an individual's ability to seek eviction and remedies available in state court. Counsel then proceeded to reiterate the history of the Lindsey bankruptcy, the stay relief granted on June 2 and the parties' eviction litigation in state court. Counsel contended that based on Lindsey's codebtor argument being raised and rejected at the April 15, 2014 hearing, and the June 2 order granting DRI relief from stay, Wilson's adversary complaint should be dismissed; the stay violation issues of which she complained had already been resolved against her. In addition, counsel argued that Wilson could not prove any damages.

-7-

Finally, DRI's counsel noted that Wilson would try to argue the Motion to Dismiss should be treated as one for summary judgment. However, counsel contended that because Wilson had attached over 100 pages of documents to her complaint and incorporated these documents as part of her factual and legal averments against DRI, DRI could rely upon those averments to establish that her claim had no basis and the motion still could be treated as one under Civil Rule 12(b)(6).

When Wilson tried to speak, the bankruptcy court told her to "close her binder" and informed Wilson that it was not going to consider her argument based on her late-filed opposition and its previous finding in case no. 12-18817 that she had filed documents for the sole purpose of delaying eviction. The court then gave its oral ruling in favor of DRI. It found Wilson was engaging in the same delay tactics to prevent DRI from evicting her from the property. In addition, the court found that it had already ruled on Wilson's codebtor status in the June 2 order, noting that the debtor is the intended beneficiary of the codebtor stay under § 1301, not the codebtor. However, to the extent it had not ruled on the codebtor stay, in the interest of equity the court was retroactively annulling the stay to the April 15, 2014 hearing in the Lindsey bankruptcy.

An order granting DRI's Motion to Dismiss and dismissing Wilson's adversary complaint filed in the Lindsey bankruptcy was entered on December 2, 2014 ("Dismissal Order"). The Dismissal Order did not specify whether it had been decided under Civil Rule 12(b)(6) or 56. Wilson timely appealed the Dismissal Order. / / /

-8-

**4. DRI's motion for attorney's fees and costs**

DRI then moved for attorney's fees and costs incurred in defending against Wilson's adversary complaint filed in the Lindsey bankruptcy ("Fee Motion"). DRI contended that because Wilson's complaint was filed in bad faith, as found by the bankruptcy court, it was entitled to recover its attorney's fees and costs under Civil Rule 54 and § 105(a). DRI argued that the bankruptcy court could award fees as a sanction under § 105 based on the court's finding that Wilson is a vexatious litigant and serial filer. In addition, DRI contended it was entitled to costs under Civil Rule 54 as the prevailing party.

As required by Local Rule 54-16, DRI's counsel filed a statement of fees and supporting declaration. Counsel stated that 52.6 hours were expended in defending against Wilson's frivolous complaint. However, the normal hourly rate billed for attorneys had been reduced from $325 and $295/hour to $170 and $150/hour. DRI requested that it be awarded what it contended were extremely reasonable attorney's fees of $8,529 and $86.35 in costs. Counsel had deducted an additional 14.4 hours that were spent defending against the adversary complaint Wilson had filed in her own bankruptcy case against DRI (Adv. No. 14-1120).

**5. Wilson's opposition to the Fee Motion and DRI's reply**

Wilson timely opposed the Fee Motion, first contending the bankruptcy court lacked jurisdiction to decide the matter due to her appeal of the Dismissal Order. Wilson further contended that DRI's fee request had already been "asked and answered" at the hearings on October 2, 2014, and October 14, 2014 (an unrelated hearing regarding Wilson's adversary complaint filed in her own

-9-

case).  Wilson contended the bankruptcy court had previously denied "fees and sanctions" to DRI, "finding that no bad faith existed" as to her adversary complaint.  Finally, Wilson argued that DRI had filed the Fee Motion in retaliation for her appeal of the Dismissal Order.  Wilson did not contest the amount of the fees requested by DRI or contend they were unreasonable.

DRI disputed Wilson's contention that the bankruptcy court was divested of jurisdiction over the Fee Motion due to the appeal of the Dismissal Order.  DRI also disputed Wilson's contention that the issue of DRI's fees and costs had already been decided. No findings were issued at the October 2 hearing or in the Dismissal Order precluding DRI from seeking its attorney's fees and costs.  Finally, DRI contended that Wilson's "retaliation" argument was nothing more than a personal attack against DRI and lacked any evidentiary basis.  DRI argued it was entitled to recover attorney's fees and costs under Civil Rule 54 as the prevailing party and based on its request for sanctions.

### 6.    Hearing and ruling on the Fee Motion

On January 21, 2015, the clerk issued a notice to DRI and Wilson that the January 22 hearing for the Fee Motion had been rescheduled for February 3, 2015.

The hearing on the Fee Motion proceeded on February 3.  DRI appeared but Wilson did not.  At the start, counsel for DRI expressed concern that Wilson was not at the hearing.  After determining Wilson was served with the clerk's notice of the rescheduled hearing, the court noted for the record that Wilson did receive notice, that she had filed an opposition to the Fee Motion and that she was incorrect in arguing the bankruptcy court

-10-

lacked jurisdiction to award attorney's fees and costs based on the appeal of the Dismissal Order. The court agreed with DRI that it had not previously determined DRI was precluded from recovering attorney's fees and costs in connection with Wilson's adversary complaint filed in the Lindsey bankruptcy. Noting that Wilson had failed to challenge the reasonableness of DRI's attorney's fees, the court found the fee request to be "extremely reasonable" and that DRI's request was "appropriate given the manner in which Ms. Wilson ha[d] proceeded in the adversary and in other matters in this court." Hr'g Tr. (Feb. 3, 2015) 11:7-13. Accordingly, the court granted the Fee Motion and awarded fees and costs in the amount requested.

The bankruptcy court entered an order granting the Fee Motion on February 12, 2015 ("Fee Order"). The Fee Order did not articulate under what legal authority the court was awarding DRI its fees and costs. Wilson timely appealed the Fee Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158(b).

## III. ISSUES

1.   Did the bankruptcy court err in granting the Motion to Dismiss?

2.   Did the bankruptcy court abuse its discretion in granting the Fee Motion?

## IV. STANDARDS OF REVIEW

The bankruptcy court's application of the rules of procedure is reviewed de novo. Ruvacalba v. Munoz (In re Munoz), 287 B.R. 546, 550 (9th Cir. BAP 2002). Likewise, whether a party's due

-11-

process rights were violated is a question of law we review de novo. Miller v. Cardinale (In re Deville), 280 B.R. 483, 492 (9th Cir. BAP 2002). We review the bankruptcy court's assessment of sanctions for an abuse of discretion. Id. Accordingly, we reverse where the bankruptcy court applied an incorrect legal rule or where its application of the law to the facts was illogical, implausible or without support in inferences that may be drawn from the record. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010)(citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc)).

## V. DISCUSSION

**A. The bankruptcy court erred in granting the Motion to Dismiss.**

**1. The motion should have been converted to one for summary judgment.**

Among other arguments, Wilson contends the bankruptcy court committed reversible error when it considered evidence raised by DRI for the first time at the hearing on the Motion to Dismiss and relied on that evidence without giving her an opportunity to dispute it, thereby denying her due process rights. We agree.

DRI requested relief under Civil Rule 12(b)(6), made applicable here by Rule 7012. In opposition to the Motion to Dismiss, Wilson raised the argument that DRI's motion had failed to comply with summary judgment notice requirements under Local Rule 7056. Counsel for DRI at the October 2 hearing stated that Wilson's position was that the Motion to Dismiss should be treated as a motion for summary judgment. However, counsel contended that because Wilson had attached over 100 pages of documents to her complaint and relied on these documents for her claim against DRI,

-12-

he could rely on those same documents to establish that Wilson's claim had no basis and yet the motion could still be treated as one under Civil Rule 12(b)(6).

"A federal court must convert a Civil Rule 12(b)(6) motion to one for summary judgment when the parties submit, and the court does not reject, material beyond the pleadings." Fernandez v. GE Capital Mortg. Servs., Inc. (In re Fernandez), 227 B.R. 174, 179 (9th Cir. BAP 1998)(citing Parrino v. FHP, Inc., 146 F.3d 699, 706 n.4 (9th Cir. 1998); Cunningham v. Rothery (In re Rothery), 143 F.3d 546 (9th Cir. 1998)); Civil Rule 12(d).[5] "Material outside the pleadings includes affidavits, affirmative defenses, and judicial notice of the record or transcripts from prior court proceedings." Id. at 179-80 (citing Tanner v. Heise, 879 F.2d 572, 577 (9th Cir. 1989)(affidavits); United Parcel Serv., Inc. v. Cal. Public Util. Comm'n, 839 F. Supp. 702 (N.D. Cal. 1993), rev'd on other grounds, 77 F.3d 1178 (9th Cir. 1996)(affirmative defense);[6] Jacobson v. AEG Capital Corp., 50 F.3d 1493, 1496 (9th Cir. 1995) (judicial notice of defendant's prior bankruptcy case)["In considering AEG's motion to dismiss, the district court

---

[5] Civil Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

[6] We note that when an affirmative defense "is obvious on the face of a complaint" the defendant can raise that defense in a motion to dismiss without the motion being converted to summary judgment. Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013). However, that rule is generally reserved for defenses such as statute of limitations. Id.

-13-

took judicial notice of the extensive records and transcripts from the prior bankruptcy proceedings. We therefore review the district court's dismissal as an order granting summary judgment."]).

Although the Dismissal Order, drafted by counsel for DRI and adopted wholesale by the bankruptcy court, is silent at to what rule the court relied upon to dismiss Wilson's complaint, it appears to have done so under Civil Rule 12(b)(6). This ruling under Civil Rule 12(b)(6) constituted error.

Two factors suggest that conversion to Civil Rule 56, applicable here via Rule 7056, was appropriate in this case. First, affirmative defenses were raised by DRI and relied upon by the bankruptcy court to decide the motion. DRI argued it had not violated the codebtor stay as to Wilson because that legal issue had already been decided against her in the June 2 stay relief order. The bankruptcy court agreed and found in the Dismissal Order that the codebtor stay was in fact terminated in the June 2 order. The legal effect of the stay relief order "is a conclusion of law, not fact, and a 12(b)(6) motion does not ask the court to find law, but rather to find if, as a matter of law, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" In re Fernandez, 227 B.R. at 179 (citations omitted).

Second, the bankruptcy court took judicial notice of the record in one of Wilson's prior bankruptcy cases and relied heavily on a finding made in that case for its decision to dismiss. In addition to considering the number of bankruptcy cases Wilson has filed, the bankruptcy court took judicial notice

-14-

of an in rem order it had entered in case no. 12-18817, where it found Wilson to be a serial filer, engaging in efforts to hinder and delay a former landlord's ability to evict her.

Thus, despite Wilson's many documents attached to her complaint, which the bankruptcy court could consider without converting the Motion to Dismiss, the court additionally considered and relied upon DRI's affirmative defenses and took judicial notice of matters from prior bankruptcy proceedings, which should have converted the Motion to Dismiss to one for summary judgment. Lucas v. Dep't of Corrs., 66 F.3d 245, 248 (9th Cir. 1995); Gibb v. Scott, 958 F.2d 814, 816-17 (8th Cir. 1992) (if matters outside the complaint are presented, and the court relies on those evidentiary materials to decide the motion, it must resolve the motion according to the summary judgment standard of Civil Rule 56); In re Fernandez, 227 B.R. at 180.[7] The consideration of materials beyond the pleadings and reliance on those materials for a decision to dismiss raises the issue of whether Wilson received proper notice under Civil Rule 12(d) of the conversion from a Civil Rule 12(b)(6) motion to a Civil Rule 56 motion.

**2. The bankruptcy court failed to provide Wilson with proper notice of the conversion or a full and fair opportunity to defend.**

The Ninth Circuit does not require strict adherence to formal

---

[7] Even if the bankruptcy court was not required to convert the Motion to Dismiss into one for summary judgment, the scope of its determination was limited to the face of the complaint and the attached documents whose authenticity was not in question. It erred by engaging in fact finding and not excluding but, instead, weighing evidence extrinsic to the complaint and drawing inferences against Wilson.

-15-

notice requirements when converting a Civil Rule 12(b)(6) motion into a motion for summary judgment. In re Rothery, 143 F.3d at 549; In re Fernandez, 227 B.R. at 180. It will suffice if the nonmovant "is 'fairly apprised' before the hearing that the court will look beyond the pleadings." In re Rothery, 143 F.3d at 549 (citing Mayer v. Wedgewood Neighborhood Coal., 707 F.2d 1020, 1021 (9th Cir. 1983)). In other words, the court "need only apprise the parties that it will look beyond the pleadings to extrinsic evidence and give them an opportunity to supplement the record." San Pedro Hotel Co. v. City of L.A., 159 F.3d 470, 477 (9th Cir. 1998). Additionally, a bankruptcy court may grant summary judgment without advance notice "if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the motion.'" In re Rothery, 143 F.3d at 549 (citing Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431, 1439 (9th Cir. 1995)).

The notice requirement that a motion to dismiss is being treated as one for summary judgment, however, is heightened for pro se plaintiffs. A court "must inform a plaintiff who is proceeding pro se that it is considering more than the pleadings, and must give the plaintiff 'a reasonable opportunity to present all material made pertinent to such a motion by [Civil] Rule 56.'" Allen v. Figueroa, 1995 WL 314704, at *6 (9th Cir. 1995)(quoting Garaux v. Pulley, 739 F.2d 437, 438-39 (9th Cir. 1984)).

Here, Wilson was not fairly apprised before the hearing that the bankruptcy court might dispose of her complaint by summary judgment, nor did she have a full and fair opportunity to

-16-

ventilate the issues.[8]  Although DRI raised the issue of Wilson's many bankruptcy filings in the Motion to Dismiss, it did not raise the issue of the court's "serial filer" finding made in case no. 12-18817 until the hearing on October 2.  Because her opposition had been filed late and because the bankruptcy court had previously found Wilson to be a serial filer who had engaged in delay tactics with another landlord trying to evict her, the court refused to let Wilson speak at the hearing.

We realize that because her opposition to the Motion to Dismiss was filed late, the court was authorized to not consider it and not allow her to speak at the hearing.  However, because DRI had introduced new evidence at the hearing, the bankruptcy court erred by not giving Wilson any opportunity to defend against it before ruling.  The court clearly relied upon this evidence to find that Wilson was engaging in the same delay tactics as she had before, to therefore conclude, in part, that her claims against DRI lacked any merit.  Perhaps Wilson has no defense to the prior order.  Nonetheless, procedural requirements and due process must be observed.

**B.    The bankruptcy court abused its discretion in granting the Fee Motion.**

Wilson raises a variety of arguments for why the bankruptcy court abused its discretion in awarding DRI its attorney's fees and costs, which we address in turn.

Wilson is incorrect in arguing the bankruptcy court lacked

---

[8] We further note that for a summary judgment motion, DRI was required to provide Wilson with 42 days notice prior to the hearing.  Local Rule 7056(f).  Wilson received only 36 days notice.

-17-

jurisdiction to enter the Fee Order in light of her appeal of the Dismissal Order. Even when a notice of appeal has been filed, the trial court retains jurisdiction to rule upon a request for attorney's fees. League of Woman Voters of Cal. v. F.C.C., 751 F.2d 986, 990 (9th Cir. 1985) (citing Masalosalo v. Stonewall Ins. Co., 718 F.2d 955, 956-57 (9th Cir. 1983)); Hill & Sandford, LLP v. Mirzai (In re Mirzai), 236 B.R. 8, 10 (9th Cir. BAP 1999) (despite the filing of a notice of appeal, the bankruptcy court can "correct clerical errors, take steps to maintain the status quo, take steps that aid in the appeal, award attorney's fees, impose sanctions, and proceed with matters not involved in the appeal").

We also reject Wilson's argument that the bankruptcy court abused its discretion in awarding attorney's fees to DRI because it had previously ruled that her complaint was not filed in bad faith and had denied DRI's request for fees and costs. The "complaint" Wilson is referring to is the one she filed in her own bankruptcy case (Adv. No. 14-1120), and the related hearing where the bankruptcy court made its "no bad faith" finding was held on October 14, 2014. Neither that complaint nor that hearing is relevant to her complaint at issue in this appeal. Further, the bankruptcy court stated at the hearing on the Fee Motion and in the Fee Order that it had made no prior ruling denying DRI its fees and costs respecting Wilson's complaint filed in the Lindsey bankruptcy.

Wilson next contends the bankruptcy court abused its discretion by holding the Fee Motion hearing on February 3 despite being notified she was ill and unable to attend. Wilson contends

-18-

she informed the court the morning of the hearing that she was unable to appear due to illness. Nothing in the record corroborates Wilson's story. Accordingly, she has not established the bankruptcy court abused its discretion by conducting the hearing despite her absence. Wilson fails to note the court did consider her opposition and addressed her arguments on the record.

Finally, Wilson argues that the award of attorney's fees and costs are not recoverable as a sanction because the bankruptcy court did not make any ruling as to her bad faith in the Fee Order. DRI contends that as the "prevailing party" the bankruptcy court could award fees and costs to it under Rule 7054 or that, alternatively, the court was allowed under Rule 7054 to award fees as a sanction for Wilson's bad faith, and a finding that she is a serial filer falls within that definition.

The Fee Order fails to articulate what legal authority the bankruptcy court relied upon for its award of attorney's fees and costs to DRI. In the Fee Motion, DRI had requested fees and costs under Civil Rule 54, Rule 7054 and § 105(a). Civil Rule 54 deals with judgments, costs and attorney's fees. Civil Rule 54(a)-(c) concern the form and content of judgments; Civil Rule 54(d)(1) and (2) concern claims for costs and attorney's fees. Rule 7054, applicable in adversary proceedings in bankruptcy, provides in section (a) that "[Civil] Rule 54(a)-(c) . . . applies in adversary proceedings." Rule 7054(b) addresses the allowance of costs in adversary proceedings.

DRI is incorrect that the bankruptcy court could award attorney's fees under Civil Rule 54 or Rule 7054 because DRI was the prevailing party or that the court had authority under

-19-

Rule 7054 to award fees as a sanction for Wilson's bad faith. "[Civil] Rule 54(d)(2) creates a procedure but not a right to recover attorney's fees . . . . [T]here must be another source of authority for such an award." MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co., 197 F.3d 1276, 1280-81 (9th Cir. 1999). "The requirement under [Civil] Rule 54(d)(2) of an independent source of authority for an award of attorneys' fees gives effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." Id. at 1281 (citation omitted).

The only other statutory basis on which the bankruptcy court could have awarded attorney's fees, which DRI raised in its Fee Motion, is § 105(a). In any event, to award fees the bankruptcy court relied strictly on its finding in the Dismissal Order that Wilson was a serial filer who was again engaging in delay tactics to avoid eviction to support its award for attorney's fees as a sanction against Wilson. That finding never should have been made for the reasons we discussed above. Therefore, without this finding to support the fee award to DRI, the Fee Order cannot stand with respect to the award of attorney's fees under § 105(a). The same would be true if the court relied on its inherent power to sanction Wilson. However, as noted, we cannot determine on what legal basis the bankruptcy court awarded fees as a sanction against Wilson.

As for costs, DRI is correct that as the prevailing party it could recover costs under Rule 7054(b). However, since DRI should not have been the prevailing party for procedural reasons, the cost award cannot stand on that basis either. To the extent costs

-20-

were awarded under § 105(a), that award also fails because of the lack of any finding to support it due to our vacatur of the Dismissal Order.

## VI. CONCLUSION

Because the bankruptcy court did not provide Wilson with any notice it was converting the Motion to Dismiss to one for summary judgment or give her any meaningful opportunity to address new evidence presented by DRI at the hearing before ruling against her, we VACATE the Dismissal Order. We also VACATE the Fee Order because the sanction of attorney's fees and costs is not supported due to our vacatur of the Dismissal Order. We REMAND these matters to the bankruptcy court for further proceedings consistent with this decision.