BARRON, Circuit Judge,
concurring in the judgment.
The facts of this case do not require us to decide whether the word “income” in the “criminal livelihood” sentencing enhancement refers to the gross or to the net receipts of a defendant’s criminal activity. For, as the majority well explains, however one construes the guideline, it would not affect the outcome in this case. Nevertheless, because the majority has weighed in on the issue of what “income” means, I wish to explain why I come out the other way.
The majority’s reading of that word may be what the Sentencing Commission had in mind. It also might not be. I can see that there is room for debate about just how unclear the guideline is. In my view, though, the ambiguity is not superficial, but grievous. And because the rule of lenity dictates that enhancements in the United States Sentencing Guidelines may not be read broadly when they are this unclear, see Muscarello v. United States, 524 U.S. 125, 138-39, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (“To invoke the rule [of lenity], we must conclude that there is a grievous ambiguity or uncertainty in the statute.” (citation omitted)); see also United States v. Luna-Díaz, 222 F.3d 1, 3 n.2 (1st Cir. 2000) (noting that the rule of lenity applies to the interpretation of sentencing guidelines),[10] I believe we have no choice but to opt for the narrower “net” reading here.[11]
*136 I.
To start, there is no doubt that the word “income” could refer to either the gross or the net receipts of a defendant’s criminal activity. As the majority acknowledges, no dictionary — legal or otherwise — indicates to the contrary.
The guideline itself is of no help in resolving the ambiguity. It does not set forth a definition of “income” of its own. Nor does the guideline’s application note make any direct reference to the word that might settle the matter.
I have looked at how the word “income” is used elsewhere in the Guidelines in hopes that such usage might clear things up. It does not. And it certainly does not show that “income” clearly means “gross income.” The Guidelines mention the word “income” only a handful of times. In only one instance is the word modified. And, in that instance, the modifier is the word “gross.” U.S.S.G. § 2T1.1 (referring specifically to the underreporting of “gross income”). That another guideline specifies “gross income” suggests, if anything, that the unmodified word “income” in this guideline means something else.
In consequence, the case for leaning on the rule of lenity seems to me to be quite strong. And, adding strength to that case is a Supreme Court precedent, United States v. Santos, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), that, though not controlling, is at least instructive.
The word in question in Santos was not “income” but “proceeds.” And the relevant provision was a criminal statute (one that punishes money laundering), not a sentencing guideline. But the issue was otherwise virtually identical: whether “proceeds” referred to the gross receipts that a defendant derived from criminal activity or only to the net receipts. Id. at 511, 128 S.Ct. 2020.
Five Justices in that case agreed that the word “proceeds”'did not clearly refer to gross receipts. The plurality opinion that Justice Scalia wrote for four Justices relied on the rule of lenity in opting for a “net” reading of the term.[12] Id. at 514-25, 128 S.Ct. 2020. Justice Scalia’s logic has resonance here.
Justice Scalia explained that dictionaries provided no clarity as to whether the word “proceeds” referred to net or gross proceeds. Id. at 511-12,' 128 S.Ct. 2020. He then explained that the word had not “acquired a common meaning in the provisions of the Federal Criminal Code.” Id. at 511-12, 128 S.Ct. 2020. And, finally, he explained that context shed no light on the matter, because “[u]nder either of the word’s ordinary definitions, all provisions of the federal money-laundering statute are coherent; no provisions are redundant; and the statute is not rendered utterly *137 absurd.” Id. at 513-14, 128 S.Ct. 2020. He thus concluded that the statute was ambiguous, and that the rule of lenity must therefore control. Id. at 514, 128 S.Ct. 2020.
In reaching this conclusion, Justice Sea-lia was well aware that the “net” receipts definition would be tough to administer— much tougher, that is, than a gross receipts definition. Id. at 519, 128 S.Ct. 2020. How, after all, would one decide which expenses counted? And how would the government be in a position to know what the true expenses of the criminal activity were? Would the defendant’s assertions in this regard just have to be credited?
But while these were points that the government pressed hard, id. they were not points that moved the plurality, even though Congress had offered no guidance as to how net receipts were to be determined. In rejecting the notion that such practical concerns justified a broad reading of “proceeds,” Justice Scalia pointed out that there is no tie-breaking principle that counsels judges to construe unclear statutes in the manner that best facilitates the imposition of criminal punishment. Rather, he pointed out that the longstanding interpretive presumption is just the opposite: that ambiguous criminal measures are to be construed narrowly to protect defendants. Id. (“We interpret ambiguous criminal statutes in favor of defendants, not prosecutors”).
II.
Of course, even ambiguous words, in context, may acquire a clear-enough meaning that it would be improper to apply the rule of lenity. But we know that the plurality in Santos thought it appropriate to use this longstanding interpretive tool to determine whether “proceeds” referred to net or gross receipts. To me, therefore, the question is simply whether there is any good reason to proceed differently here. In my view, there is not, especially considering this guideline’s history.
An earlier version of the “criminal livelihood” guideline imposed an enhanced sentence if the defendant derived a “substantial portion of his income” from his criminal conduct. U.S.S.G. § 4B1.3 (amended 1988). The Seventh Circuit, per Judge Posner, read the word “income” in that iteration of the guideline to refer to net rather than gross receipts. Lee v. United States, 939 F.2d 503, 504 (7th Cir. 1991).
Judge Posner’s reasons for doing so are persuasive to me. Judge Posner explained that the word “income” in that version of the guideline “[s]urely” had to be read to refer to net income, id. else the following absurd consequence would arise. He posited a defendant who grossed $1 million in sales a year from a legitimate business, but netted only $10,000, and who burgled $20,000 by night with no expenses. Judge Posner noted that such a defendant would not be thought to have “derived a substantial portion of his income” from his crimes if measured by comparing his gross legal income ($1 million) against his gross illegal income ($20,000). Id. (quoting the version of § 4B1.3 in effect at the time the defendant was sentenced). In addition, Judge Posner pointed out, if the defendant earned $20,000 from a lawful day job and netted only $10,000 on thefts of goods worth $1 million in retail value, his sentence would be enhanced — again, incongruously — if his income were measured by comparing his gross legal income ($20,000) to his gross illegal income ($1 million). Id No such strange results would follow, however, if “income” were simply read to refer to net receipts.
Judge Posner also emphasized that, although a defendant’s gross criminal in *138 come may be the more relevant figure for purposes of measuring the amount of harm that the defendant’s criminal activity caused, there are other provisions in the Guidelines that are intended to respond to the magnitude of the harm caused by the offense. Id As the criminal livelihood enhancement, however, “Section 4B1.3 has the narrower office of separating professionals from amateurs on the basis of the extent to which a defendant derives his livelihood from his criminal as distinct from his legal activities.” Id. And, as Judge Posner concluded, “livelihood is a matter of net rather than gross income.” Id.[13]
The majority does not take issue with Judge Posner’s explanation of why “income” had to mean net income in the first iteration of this guideline. The question is thus whether the guideline has been changed in a way that indicates with sufficient clarity that this word now must be understood to refer to gross income. I do not believe it has.
In coming to this conclusion, I recognize, as the majority notes, that, in 1990, the Sentencing Commission did amend the version of the guideline that Judge Posner was construing. And the first set of those amendments was extensive.
The guideline no longer defines criminal activity as a “livelihood” simply because the defendant “derived a substantial portion of his income” from “a pattern of conduct” of which crime was a part. Rather, the guideline’s definition of “livelihood” now has two distinct parts. The first part requires that the defendant derived income from his criminal conduct “that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law.” U.S.S.G. § 4B1.3 app. n.2(A). The second part requires that “the totality of circumstances shows that such criminal conduct was the defendant’s primary occupation in that twelve-month period (e.g., the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant’s legitimate employment was merely a front for the defendant’s criminal conduct).” Id. § 4B1.3 app. n.2(B).
But I do not see how these changes— significant though they are — make it clear that “income” now refers to gross income, given that it is most unlikely that this word did so before. I note in this regard that Judge Posner was well aware of these amendments when he wrote his decision in Lee, in which he construed “income” to mean net income. He, too, did not conclude that the amendments reflected a shift in the Commission’s view. Rather, he concluded that these amendments “dispelled” “[a]ny doubts” about whether the Commission intended “income” to refer to net rather than gross earnings. Id. at 504.
Judge Posner based that conclusion on the fact that the amendments keyed the amount that a professional criminal must make in a twelve-month period to the annual income of a minimum wage worker, rather than to some other amount. See id. at 504-05. Presumably, Judge Posner thought such a choice by the Commission — by analogizing the criminal defendant to a lawful earner who makes a minimum wage — only served to underscore his basic point: that the focus of this guideline *139 is on whether the defendant makes a livelihood from criminal activities, and not on whether those activities cause great harm. Thus, a reading of the word “income” that ensures that the inquiry focuses on what a criminal defendant takes home, rather than on merely what he takes in, makes the most sense.
That said, I would not go so far as Judge Posner and conclude that the new guideline — by referencing the annual income of a minimum wage worker — demonstrates beyond all doubt that the Commission is focused on net rather than gross income. I am confident, however, that the amended guideline, by choosing to key income to the annual earnings of a minimum wage worker, cannot be said t'o have adopted in any clear way a “gross” view of income that the earlier iteration of the guideline had declined to embrace.
The new guideline, after all, uses the same word — “income” —as did the previous version of the guideline. And the amendments added no modifier to clarify that otherwise ambiguous word’s meaning. Nor does the application note to the amended guideline provide any clarification.
In addition, because minimum wage workers, unlike many criminals, usually incur few expenses, it seems quite plausible that, in amending the guideline, the Commission still had in mind the criminal’s profit from his work rather than his gross income. After all, a drug dealer who buys drugs and then sells them at, say, a 30% mark-up, may surpass the guideline’s threshold income amount in gross earnings even if he will never succeed in earning an actual livelihood from his net profits. Why, then, does it make sense to apply a “livelihood” enhancement to a defendant simply because of the amount of his gross unlawful earnings? [14]
Moreover, it would hardly be unthinkable for the Commission to have chosen to target only those criminals who actually succeed at making a living through crime. Deterrence is specially needed for that class of criminals, due to their special propensity to persist in a life of crime. And there is no doubt that the guideline’s rai-son d’etre was to deter professional criminals, given that this was the rationale of *140 the Dangerous Special Offender statutes from which the guideline was derived. See United States v. Kerr, 686 F.Supp. 1174, 1178, 1180 (W.D. Pa. 1988) (noting that “Congress adopted [§ 4B1.3] from the Dangerous Special Offender statutes,” and that those statutes were intended to “im-poste] enhanced punishment to incapacitate professional criminals who may lack the prior convictions necessary to bring them within recidivist statutes”); id. at 1180 (“The requirement that [defendants] derive a substantial portion of their income from this pattern furthers the legitimate purpose of incapacitating professional criminals.... The defendant who has an income to which crime does not contribute a substantial portion does not depend on crime; his prospects for returning to a legitimate lifestyle may be better.”).[15]
Finally, I note that the Commission in 2010 actually amended the guideline yet again. And this time the Commission did so with the benefit of the analysis of the word “income” that Judge Posner had offered in his 1991 decision in Lee. U.S.S.G. § 4B1.3 (amended 2010). At that time, Lee was the only court of appeals decision to have definitively construed the word “income” in connection with the criminal livelihood guideline — though, as the majority points out, a number of circuits had applied the gross income approach without having any need to consider whether the gross or the net definition of “income” was intended in either the earlier or the amended version of the guideline. And, as I have explained, Lee had not only construed the word “income” in the first iteration of the guideline to mean net income but also had concluded that the 1990 amendments made crystal clear the correctness of that narrow construction. Yet, in making the 2010 amendments, the Commission saw fit to retain the same word “income” that had been there all along, and to do so without adding any clarifying modifier’.
In light of this history, I do not see how we could have any confidence that the word “income” in the guideline, as it now stands, refers to gross income. To so conclude, we would have to be confident that the Commission retained a word that is facially ambiguous, but that the Commission nonetheless impliedly intended to give that word a new meaning that is the opposite of what the only circuit court ever to have definitively construed that word had read it to mean.
III.
A key idea behind the rule of lenity is that judges should be wary of mistakenly imposing punishment on the basis of rules that have been drawn up by others but that were never intended to reach so far as judges may be asked to extend them. And, in this context, that idea seems to me to have particular force.
*141 The Commission has already proved itself to be more than capable of revising the guideline. The Commission is free to do so again. It might even do what Congress did in response to Santos — expressly state that it had in mind the gross amount. See 18 U.S.C. § 1956(c)(9) (clarifying that “the term ‘proceeds’ means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity”). And it might take that step in response to the practical concerns that the majority quite reasonably raises.
It may also be, however, that the Commission is not troubled by such concerns. In many cases, after all, a criminal’s expenses will not be hard to figure, if there are even any to be calculated. And courts have accepted that the Commission requires them to make similar calculations under other guidelines — namely the guidelines that key sentences for crimes of theft, fraud, and deceit to the amount of the victim’s “loss.” See, e.g., United States v. Smith, 951 F.2d 1164, 1167 (10th Cir. 1991); United States v. Schneider, 930 F.2d 555, 558 (7th Cir. 1991). Moreover, big-time but unsuccessful criminals hardly receive lenient treatment under the other guidelines that would apply to them. Thus, it is not obvious that the Commission intends for this particular guideline to apply to such criminals. It seems quite possible the Commission’s focus here was on a distinct group — namely, those defendants for whom a life of crime pays. And thus it seems quite possible that the Commission did not intend to impose this additional enhancement upon a defendant who made no living off of crime at all.
But whatever the Commission’s view actually is, the basic point is this: the Commission has failed to speak with the clarity that we demand before we construe legal texts in a manner that would subject persons to additional criminal punishment. As a result, I would not apply the guideline as broadly as the majority would. I would instead leave the task of clarifying its breadth to the Commission.

. The defendant did not invoke the rule of lenity in making his case for the narrower, "net” reading that I would adopt. But the only reason that we are offering a construction of the relevant provision of the Guidelines is to clear things up going forward. I thus see no reason to exclude from consideration this obviously relevant tool of construction.

. The rule of lenity serves a number of functions, including the distinct one of ensuring that courts do not impose punishments because rulemakers have prescribed them unless the courts are certain that those punishments actually were prescribed. See United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (explaining that the rule of lenity is justified by the idea that, "because of the seriousness of criminal penal *136 ties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should.” (citations omitted)). Thus, in my view, the rule of lenity still applies to the Guidelines notwithstanding Beckles v. United States, - U.S. -, 137 S.Ct. 886, 197 L.Ed.2d 145 (2017), which established that the vagueness doctrine does not apply to the Guidelines because vagueness in the Guidelines does “not implicate the twin concerns underlying vagueness doctrine — providing notice and preventing arbitrary enforcement.” Id. at 894.

. Justice Stevens declined to join the plurality opinion, writing that "proceeds” may mean “net” in some circumstances and "gross” in others. Santos, 553 U.S. at 525, 128 S.Ct. 2020 (Stevens, J., concurring in judgment). Justice Stevens did, however, agree with the plurality that Congress would not have intended "proceeds” to mean "gross” in the case at hand. Id. at 527-28, 128 S.Ct. 2020.

. I note that U.S.S.G. § 2T1.4 also uses the same “substantial portion of his income” language as did the version of the guideline Judge Posner construed. Specifically, § 2T1.4 provides for an enhancement where a defendant provided "aid, assistance, procurance, or advice” regarding tax fraud "as part of a pattern or scheme from which he derived a substantial portion of his income.” As best I can tell, no cases have yet considered whether "income” in this provision refers to gross or net receipts, though it would appear that Judge Posner’s analysis would have equal force in construing the term.

. It is true that the hourly minimum wage is a pre-tax figure, but that hardly indicates that the Commission intended for courts to ignore a defendant’s expenses in determining whether a defendant has made a living through crime. Tellingly, this guideline is "derived from” the (now repealed) Dangerous Special Offender statutes, 18 U.S.C. § 3575(e)(2) and 21 U.S.C. § 849(e)(2), and was intended to "embody[] the same considerations” as those statutes. See S. Rep. No. 98-225, at 176, 120 (1983). Those statutes instructed courts to determine whether the defendant derived a "substantial source of income” from criminal activity as compared to the defendant’s lawful "adjusted gross income.” And "adjusted gross income” is a pre-tax figure that takes account of business expenses.
Moreover, it would surely be a surprise if there are many minimum wage workers Who — like many criminals, and those involved in the drug trade in particular — have expenses so substantial that they may swallow up their earnings. In fact, the Fair Labor Standards Act (FLSA) specifies that wages must be paid "free and clear.” 29 C.F.R. § 531.35. Thus, such expenses as uniforms and, in some cases, even travel, cannot be charged to the employee, if such expenses would drive the employee’s pay below minimum wage. See Arriaga v. Florida Pac. Farms, L.L.C., 305 F.3d 1228, 1236-37 (11th Cir. 2002) (explaining that the "free and clear” provision requires employers to reimburse employees for expenses that are primarily for the benefit of employers, including tools and uniforms, and that employers cannot avoid this rule by simply requiring employees to make such purchases on their own); see also Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 897 (9th Cir. 2013) (requiring H-2A visa employees to pay for their own inbound travel and visa expenses violates "free and clear” rule).

. Those statutes applied additional punishment where a defendant was convicted of a crime as part of a pattern of criminal conduct "which constituted a substantial source of his income.” 18 U.S.C. § 3575(e)(2); 21 U.S.C. § 849(e)(2). The statutes defined a "substantial source” as an amount which exceeds the annual minimum wage and exceeds half of the defendant's declared adjusted gross income (that is, net income by another name). Id. The fact that Congress specified that lawful earnings should be measured by “adjusted gross income,” while unlawful earnings should be measured by "income,” left unclear just how "income” — full stop — is to be measured. But, even if “income” meant gross income, due to its contrast with the more specific "adjusted gross income,” the guideline in its initial form — by using the word "income” alone, and thus without any contrast to "adjusted gross income” — could only have been referring to net income for the reasons that Judge Posner gives. Thus, nothing in the way the word “income” was used in the precursor statutes clears things up with respect to what the word means in the guideline.